

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
06/10/2016

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **MCCOLLOM INTERESTS, LLC,** | § | **Case No. 13-32728** |
| | § | |
| **Debtor.** | § | **Chapter 7** |

## MEMORANDUM OPINION REGARDING THE SECOND AND FINAL APPLICATION FOR ALLOWANCE OF COMPENSATION OF EXPENSES OF GENERAL COUNSEL FOR THE PERIOD MAY 1, 2014 THROUGH NOVEMBER 15, 2015
### [Doc. No. 69]

### I. INTRODUCTION

A disturbing trend has developed among Chapter 7 panel trustees in the Southern District of Texas to disregard the Bankruptcy Code and Bankruptcy Rules[1] as they administer their assigned cases. In *In IFS Financial Corp.*, 803 F.3d 195 (5th Cir. 2015), a Chapter 7 trustee allowed his own law firm, with his wife serving as the lead counsel, to improperly bill the estate for personal expenses incurred by the trustee's family (including his wife and children) for traveling to New Orleans for oral argument before the Fifth Circuit. In *In re King*, 546 B.R. 682 (Bankr. S.D. Tex. 2016), a different Chapter 7 trustee allowed his own law firm to improperly bill the estate for services that the trustee himself should have rendered. In the case at bar, yet another Chapter 7 trustee has allowed the law firm where his daughter is employed to improperly bill the estate in a variety of ways. This Opinion reviews the numerous infirmities in the billing practices to which the trustee should have objected when he reviewed the invoice.

### II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

1. On May 6, 2013, McCollom Interests, LLC (the "<u>Debtor</u>") filed a voluntary Chapter 7 petition. [Doc. No. 1].

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and any reference to a "Rule" is a reference to the Federal Rules of Bankruptcy Procedure. Further, any reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

2.  On June 5, 2013, Rodney D. Tow was appointed as the Chapter 7 trustee in this case (the "Trustee"). [Doc. No. 14]. The Trustee has been practicing law in the State of Texas since 1984; has been serving as a bankruptcy trustee since 1992; and has handled thousands of bankruptcy cases ranging from "simple 'no asset' cases to complex asset recovery and litigation" cases. [Case No. 09-32467, Doc. No. 28, p. 2 of 9]. He is board-certified in business and consumer bankruptcy by the Texas Board of Legal Specialization.[2]

3.  On October 17, 2013, the Trustee filed his Application to Employ Cooper & Scully, P.C. as General Counsel Pursuant to 11 U.S.C. § 327(a) (the "Original Application to Employ"). [Doc. No. 25]. According to "Exhibit 1" attached to the Original Application to Employ, the following attorneys and paralegals at Cooper & Scully, P.C. (the "Firm") would be working on this case at the following hourly rates: Timothy Micah Dortch ("Dortch") ($375.00); R. Brent Cooper ("Cooper") ($375.00); Chris Lindstrom ("Lindstrom") ($300.00); and Luisa Ulluela ("Ulluela") ($100.00). [Doc. No. 25-2]. Indeed, the language expressly represented that the **only** individuals who would be working on this case were these four individuals: "The hourly rates for the attorneys and paraprofessionals of Cooper & Scully P.C. that will be working on this case are as follows: Timothy Micah Dortch ($375.00), R. Brent Cooper ($375.00), Chris Lindstrom ($300.00), Luisa Ulluela ($100.00)." [*Id.*].

4.  On the same day, the Trustee filed an Amended Application to Employ (the "Amended Application to Employ") again requesting that this Court approve the Trustee's retention of the Firm to represent him in this case. [Doc. No. 26]. In the Amended Application to Employ, the Trustee again requested this Court to approve the same four individuals (i.e.,

---

[2] *See* Case Number 10-80278, Docket Number 110-1, wherein the Trustee stated the following in his affidavit dated July 16, 2010: "I am Board Certified in Consumer Bankruptcy and Business Bankruptcy."

Dortch, Cooper, Lindstrom, and Ulluela) to render services to the Trustee. [Doc. No. 26-2]. Indeed, the language once again expressly represented that the **only** individuals who would be working on this case were these four individuals: "The hourly rates for the attorneys and paraprofessionals of Cooper & Scully P.C. that will be working on this case are as follows: Timothy Micah Dortch ($375.00), R. Brent Cooper ($375.00), Chris Lindstrom ($300.00), Luisa Ulluela ($100.00)." [*Id.*]. Neither the Original nor the Amended Application to Employ ever disclosed that Lauren Tow ("Ms. Tow"): (1) is the Trustee's daughter; (2) is an associate at the Firm; and (3) would provide legal services in this case to the estate. Also, neither the Original nor the Amended Application to Employ disclosed that Julie Koenig ("Ms. Koenig"), who is a senior associate at the Firm and a former law partner of the Trustee, would provide legal services in this case to the estate. [*See* Doc. No. 69-1, p. 4 of 18].

5. In both the Original Application to Employ and the Amended Application to Employ, the Trustee, in support of his request that the Firm be allowed to represent him, attached the affidavit of Dortch, a shareholder at the Firm who is also the attorney in charge for the representation of the Trustee in this case. [Doc. No. 40]. This affidavit, which is two pages, makes no disclosure that the Trustee's daughter is employed at the Firm as an associate attorney. In fact, Dortch affirmatively represented that "the Firm has no other connections with . . . any other parties in interest . . . and is a 'disinterested person' within the definition of Section 101(14) of the Bankruptcy Code on the matters for which it is to be engaged as general counsel." [Doc. No. 25-1]; [Doc. No. 26-1].

6. Dortch's affidavit also represented to this Court what the scope of the Firm's representation of the Trustee would be:

> Legal representation undertaken by the Firm includes (a) assisting the Movant in claims owned by the estate against

3

third parties; (b) preparing and filing such pleadings as are necessary to pursue the estate's claims against third parties; (c) conducting appropriate examinations of witnesses, claimants and other parties in interest in connection with such litigation; (d) representing the Movant in any adversary proceedings and other proceedings before the Court and in any other judicial or administrative proceeding in which the claims described herein may be affected; (e) collecting any judgment that may be entered in the contemplated litigation; (f) handling any appeals that may result from the contemplated litigation; and (g) performing any other legal services that may be appropriate in connection with the prosecution of the litigation described above.

[Doc. No. 25-1]; [Doc. No. 26-1].

7.  Aside from Dortch's failure to disclose to this Court and all creditors in this case that the

Trustee's daughter is an associate at the Firm, the Trustee himself failed to make this

disclosure in both the Original Application to Employ and the Amended Application to

Employ.  In fact, the Trustee made the following representation to the Court:

> [T]he [Firm] has no other connection with the Debtor, its
> creditors, any other parties in interest, their respective
> attorneys and accountants, the United States trustee, or any
> person employed in the office of the United States Trustee
> and are "disinterested persons" within the definition of
> Section 101(14) of the Bankruptcy Code on the matters for
> which it is to be engaged as general counsel.

[Doc. No. 25, p. 3 of 6]; [Doc. No. 26, p. 3 of 6].

8.  On February 11, 2014, in reliance upon the representations made by the Trustee and

Dortch, this Court entered an order granting the Amended Application to Employ.  [Doc.

No. 40].  Attached to this order was an "Exhibit 1."  This exhibit expressly states the

following: "The hourly rates for the attorneys and paraprofessionals of Cooper & Scully

P.C. that will be working on this case are as follows: Timothy Micah Dortch ($375.00),

R. Brent Cooper ($375.00), Chris Lindstrom ($300.00), Luisa Ulluela ($100.00)." [*Id.* at

p. 3 of 3].  No reference was made to either Ms. Tow, the Trustee's daughter, or to Ms.

4

Koenig, the Trustee's former law partner.  Stated differently, this Court did not approve either Ms. Tow or Ms. Koenig to work on this case.

9.  On May 8, 2014, the Firm filed its Interim Application for Compensation and Reimbursement of Expenses of General Counsel for the Period of October 16, 2013 Through April 30, 2014 (the "Interim Fee Application"), wherein the Firm requested this Court's approval of $6,440.00 in attorneys' fees and reimbursement of expenses totaling $405.91.  [Doc. No. 47].  The services described in the Interim Fee Application related to the Firm's representation of the Trustee in this case.  [*Id.*].

10. On June 13, 2014, this Court entered an order approving, in its entirety, the Interim Fee Application (the "Order Approving Interim Fee Application").  [Doc. No. 51].

11. On December 16, 2015, the Firm filed its Second and Final Application for Allowance of Compensation of Expenses of General Counsel for the Period May 1, 2014 Through November 15, 2015 (the "Final Fee Application").  [Doc. No. 69].  The Final Fee Application seeks approval for fees of $7,075.00 and reimbursement of expenses totaling $841.26—resulting in an aggregate amount of $7,916.26.  [*See id.*].  The services described in the Final Fee Application relate to the Firm's representation of the Trustee for a separate and distinct time period from the time period associated with the Interim Fee Application.

12. No objections or responses to the Final Fee Application were filed by any creditor or party-in-interest in this case.

13. On February 12, 2016, this Court, fulfilling its independent duty to review fee applications, *sua sponte*, held a hearing on the Final Fee Application (the "February 12 Hearing").  At this hearing, the Trustee and Lindstrom, who is a shareholder in charge of supervising the Firm's Houston office, testified in support of the Final Fee Application.

5

[*See* Hr'g Tr. 9:11–20; 17:18–22, Feb. 16, 2016].  Dortch was unable to attend this hearing.  The Court therefore continued the hearing until February 16, 2016 so as to afford him the opportunity to testify in support of the Final Fee Application.

14. On February 16, 2016, this Court held the continued hearing on the Final Fee Application (the "February 16 Hearing") and Dortch, as well as Lindstrom, gave testimony in support of the Final Fee Application.  After Dortch gave certain testimony, he informed the Court that the Firm would withdraw the Final Fee Application.  [*See* Hr'g Tr. 15:21–24, Feb. 16, 2016]; [Doc. No. 84, p. 1 ¶ 3].

15. On March 24, 2016, the Firm filed its Notice of Withdrawal of the Final Fee Application (the "Notice of Withdrawal"), wherein the Firm advised the Court, and all creditors and parties-in-interest, that it no longer sought "any additional fees in this matter other than the fees and expenses previously awarded." [Doc. No. 84].

### III. CONCLUSIONS OF LAW

**A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

1. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a).  In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases (which include contested matters) and adversary proceedings to the bankruptcy courts.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of this Chapter 7 estate.  Further, it is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(B) because it involves the allowance or disallowance of claims against the estate—namely, the Firm's claim for fees and expenses. Additionally, this contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because it involves the adjustment of the debtor-creditor relationship insofar as the fee and expense reimbursement request of the Firm—a creditor of the Debtor's estate—is being considered. Moreover, every dollar that this Court authorizes the Trustee to pay to the Firm is a dollar that will not be distributed to unsecured creditors—so this Court's decision here unquestionably invokes the adjustment of the relationship between the Debtor's estate and its creditors. Finally, this contested matter is core pursuant to the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under §157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").

   2.  <u>Venue</u>

Venue is proper pursuant to 28 U.S.C. § 1408(1), as the Debtor had its principal place of business in the Southern District of Texas for the 180 days preceding the filing of the bankruptcy petition in this case.

   3.  <u>Constitutional Authority to Enter a Final Order</u>

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any matter brought before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court

"lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. As already noted above, the pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here. A core proceeding under § 157(b)(2)(A), (B), and (O) is entirely different than a core proceeding under § 157(b)(2)(C). *See, e.g., Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also In re Davis*, 538 F. App'x 440, 443 (5th Cir. 2013) *cert. denied sub nom. Tanguy v. W.*, 134 S. Ct. 1002 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' . . . We decline to extend *Stern*'s limited holding herein.").

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2), *see In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . . ."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar. In *Stern*, the debtor filed a counterclaim based *solely* on state law; whereas, here, the claim for fees and expenses brought by the Firm is based solely on an express provision of the Bankruptcy Code (§ 330) and judicially-created bankruptcy law interpreting this

provision. This Court is therefore constitutionally authorized to enter a final order on the Fee Application. *See In re Airhart*, 473 B.R. 178, 181 (Bankr. S.D. Tex. 2012) (noting that the court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code and no state law is involved).

Finally, in the alternative, this Court has the constitutional authority to enter a final order because the Firm has consented, impliedly if not explicitly, to adjudication of this matter by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ."). Indeed, the Firm filed its Final Fee Application in this Court, [Doc. No. 133]; this Court held two hearings during which two of the Firm's attorneys appeared and gave testimony; and the Firm never objected to this Court's constitutional authority to enter a final order on the Final Fee Application. If these circumstances do not constitute implied consent, nothing does.

## B. The Court's Specific Concerns Regarding the Time Entries in the Firm's Fee Bill Statement

This Court has an independent duty to examine all fee requests made by counsel. *In re WNS, Inc.*, 150 B.R. 663, 664 (Bankr. S.D. Tex. 1993) ("Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and it has the duty to independently examine the reasonableness of the fees."); *In re Poseidon Pools of Am., Inc.*, 180 B.R. 718, 728 (Bankr. E.D.N.Y. 1995) (holding that the court must "examine the propriety of fees and expenses even where no objections are raised"). In conducting its independent review of the Final Fee Application, the Court developed concerns about several of the time entries in the Firm's fee bill statement and therefore scheduled a hearing *sua sponte*.

On the first day of the hearing on the Final Fee Application, the Trustee gave testimony that was very disconcerting to this Court:

| | |
|---|---|
| Court: | My first question, Mr. Tow, is did you look at Exhibit 1, the fee bill statement, or the time entries, if you will, before this application was filed? |
| Trustee: | Yes, I did, your Honor. |
| Court: | Did you have any consultations at all with any of the attorneys? |
| Trustee: | Well, I mean, I -- they send their fee applications to me to approve before they file them and I approved it. |
| Court: | Okay. You didn't have any problems with it as set forth therein? |
| Trustee: | Not that I saw, no, your Honor. |

[Hr'g Tr. 5:11–21, Feb. 12, 2016].

The Court finds this testimony disturbing given that the time entries of the Firm clearly reflect that: (1) there are services rendered by the Trustee's own daughter and his former law partner when they were neither disclosed to this Court nor approved as one of the attorneys who could represent the Trustee in this case; (2) there are services rendered for drafting pleadings that were never filed with the Court; (3) there are services rendered that fall within the duties of the Trustee and should not be delegated to his attorneys and billed to the estate; (4) there is excessive billing; and (5) there are duplicate entries. A few examples of each of these improper entries underscore that the Trustee's review of the Firm's fee bill statement was either incredibly cursory or a deliberate turning of a blind eye. Under either scenario, the Trustee has violated his fiduciary duty to all creditors of this Chapter 7 estate. *See* 11 U.S.C. § 704(1); *Dodson v. Huff (In re Smyth)*, 207 F.3d 758, 761 (5th Cir. 2000); *In re Melenyzer*, 140 B.R. 143, 154 (Bankr. W.D. Tex. 1992) ("A bankruptcy trustee is a fiduciary of the estate's creditors, and his duty to collect and 'conserve the assets of the estate and to maximize distribution to creditors' is a fiduciary obligation."). By supporting an unjustified fee request that, if approved, would put

10

dollars into the pockets of the Firm that employs his daughter, the Trustee is thumbing his nose at the unsecured creditors in this case, who would receive some or all of the dollars that the Trustee wants this Court to authorize him to remit to the Firm.

1. <u>Examples of Services Rendered by the Trustee's Daughter (Ms. Tow), Disclosure of Whom was Never Made to This Court or to the Estate's Creditors</u>

     **a.** *First Example*

> **Time Entry of August 12, 2014 – "Draft Motion to Withdraw Motion to Sell Property" – 0.70 hours ($210.00), entered by Ms. Tow**

The Court has attached as **Exhibit No. 1** to this Memorandum Opinion a copy of this particular motion. A review of this pleading reflects that this motion contains five very brief double-spaced paragraphs that comprise approximately one-half of a page. For any attorney to bill 0.7 hours—which translates into 42 minutes of drafting at a cost of $210.00—is patently unreasonable. Yet, that is exactly what the attorney who drafted this motion billed to the estate. This particular charge is even more unsavory because it was done by the Trustee's daughter, Ms. Tow, who has never been approved to render services on behalf of the estate in this case. [Finding of Fact No. 8]. Indeed, both the Original Application to Employ and the Amended Application to Employ expressly represented to this Court that only four individuals would be working on this case, and Ms. Tow's name was not disclosed. [Findings of Fact Nos. 3 & 4].

The Trustee's testimony about this time entry at the hearing on the Final Fee Application is telling:

> Court:        That is a two-page motion to withdraw, not even two pages. Do you believe it's reasonable to charge the estate 0.7 hours for the drafting of that motion?
>
> Trustee:     Well, for the actual typing of that motion, if that's all that was involved, then that is more time than I thought would have been reasonable . . .

| Court: | . . . I am asking you as Trustee, sir -- and it's particularly concerning to me because this is your daughter that time is being billed for – whether you really believe it's reasonable to charge 0.7 hours, $210 in value, for that pleading. |
|---|---|
| Trustee: | Okay. And if you ask the question, if it -- if that time entry relates solely to typing, preparing the pleading, I would have to answer your question no. |

[Hr'g Tr. 6:13–16; 7:3–18, Feb. 12, 2016]; [Court's Ex. Nos. 1 (the Firm's fee bill statement) & 4 (Doc. No. 54)].

### b. *Second and Third Examples*

**Time Entry of October 23, 2014 – "Draft Application to Employ Paul Smith" – 0.90 hours ($270.00), entered by Ms. Tow**

**Time Entry of November 3, 2014 – "Phone conference with Julie Warren regarding application to employ Paul Smith" – 0.40 hours ($120.00), entered by Ms. Tow**

As already noted, Ms. Tow is the daughter of the Trustee. [Finding of Fact No. 4]. The failure of both the Trustee and the Firm to make disclosure about her, and also to obtain approval for Ms. Tow to render services for the estate, reflects a glaring omission of experienced and board-certified professionals that greatly concerns this Court. In deciding whether to approve the Trustee's request to allow the Firm to represent him (i.e., the estate), this Court focused on two potential conflicts of interest: (1) whether the Trustee sought out the best law firm to represent the estate; and (2) whether the Trustee would be able to fulfill his statutory duty to object to any inappropriate fees. *See In re LTHM Houston-Operations, LLC*, 2014 WL 6871560, at *4 (Bankr. S.D. Tex. Oct. 24, 2014). If the Court had known that the Trustee's daughter was going to be providing services to the estate and that her hourly rate would be $300.00, [*see* Doc. No. 69-1, p. 4 of 18], the Court might well have not approved his retention of the Firm.

2. Examples of Services Rendered for Drafting Pleadings That Were Never Filed With the Court

    *a.  First Example*

> **October 28, 2014 – "Finalize and File Motion to Employ Appraiser" – 0.40 hours ($120.00), entered by Lindstrom**

When initially asked whether this particular motion was actually filed, neither Lindstrom nor the Trustee could respond with certainty. [Hr'g Tr. 27:19−29:8, Feb. 12, 2016]. However, at the initial hearing, Lindstrom stated that: "Well, I will tell you right now . . . If this application was not filed, then our firm should not be paid for it." [Hr'g Tr. 29:9−30:2, Feb. 12, 2016]. And, indeed, at the February 16 Hearing, Dortch confirmed that the Applicant had not, in fact, filed the motion to employ appraiser:

> Dortch:    [T]here were some issues with motions that got prepared but not filed through *nunc pro tunc* and an appraiser named Mr. Smith. Some issues there; those didn't get filed. I'm prepared to answer the court's questions on those but ***we're also not going to seek those fees since that technically never ever got filed*** . . . .

[Hr'g Tr. 5:3−9, Feb. 16, 2016] (emphasis added).  If no motion was ever filed, then no benefit to the estate was ever obtained—or, if there was a benefit, neither the Trustee nor Lindstrom gave any testimony describing it.  Therefore, the Firm should not be billing the estate for these services nor should the Trustee be supporting the Firm's request to this Court for estate funds to be used to pay the value of these services.

    *b.  Second Example*

> **December 2, 2014 – "Revise Application to Employ Paul Smith, Appraiser, Nunc Pro Tunc; e-mailed to Paul for his review & execution" – 0.50 hours ($150.00), entered by Ms. Koenig**

The attorney who rendered these services is Ms. Koenig.  She is the Trustee's former law partner, and she is now a senior associate at the Firm.  [Finding of Fact No. 4].  As with the Trustee's daughter, neither the Trustee nor the Firm sought approval from this Court for Ms.

Koenig to render services for the estate; she was not among the group of individuals at the Firm who this Court approved to render services in this case. [Findings of Fact Nos. 3, 4 & 8]. Here, she billed for time that she spent revising an application to employ an appraiser—an application that was never filed. Indeed, as already noted above, at the February 16 Hearing, Dortch confirmed that the Firm had not, in fact, filed the motion to employ appraiser:

> Dortch: [T]here were some issues with motions that got prepared but not filed through *nunc pro tunc* and an appraiser named Mr. Smith. Some issues there; those didn't get filed. I'm prepared to answer the court's questions on those ***but we're also not going to seek those fees since that technically never ever got filed*** . . . .

[Hr'g Tr. 5:3−9, Feb. 16, 2016] (emphasis added).

The Court does not understand Dortch's testimony that the Application "technically never ever got filed." Either a pleading is filed or it is not. Here, it was not, and the services should never have been billed to the estate, as there was no benefit that was ever provided to the estate for the drafting of this unfiled pleading. Indeed, the appraiser—who is identified in the entry as Paul Smith—never rendered any services to the estate.

3. <u>Examples of Services Rendered That Fall Within the Duties of the Trustee and Should not be Delegated to his Attorneys and Billed to the Estate</u>

Set forth below is the testimony that Lindstrom gave about certain services that he rendered:

*a. First Example*

> **Time Entry of January 7, 2015 – "Confer with [Realtor] regarding sale of property" – 0.20 hours ($60.00), entered by Lindstrom**

> Court: Can you tell me why are you conferring with the [realtor] regarding the sale of property?

> Lindstrom: If my memory serves me correctly, I believe I was telling her that the order had been signed by the Court.

| Court: | Is that not something that Mr. Tow in his capacity as Trustee shouldn't be doing as opposed to you? |
|---|---|
| | . . . |
| | Are you rendering a legal service to the estate by calling the [realtor] and giving the [realtor] this information? |
| Lindstrom: | . . . I believe that I – I'm not rendering a legal opinion. I want to make sure I heard you correctly. I'm not giving a legal opinion. |

[Hr'g Tr. 16:18−17:11, Feb. 12, 2016].

In *King*, this Court, citing ample case law, held that a trustee's law firm could not bill the estate for services that the trustee himself should be providing under his statutory duties. *King*, 546 B.R. at 699–700. In the case at bar, the Trustee, not Lindstrom, should be conferring with his realtor to inform her that court approval has been given for the sale of property that the realtor has been marketing. As this Court held in *King*, it is a trustee's duty to confer with the professionals—such as a real estate broker—that he has retained. *Id.* at 700. The Trustee's attorney in this case should not be billing the estate for services that the Trustee himself should be rendering under his statutory duties. And, the Trustee should not be allowing the Firm's attorneys to charge the estate for services that he himself should be performing.

### b. *Second Example*

> **Time Entry of May 27, 2014 – "Confer and correspond with buyer's agent for easement property" – 0.20 hours ($75.00), entered by Dortch**

Once again, as this Court held in *King*, communications with prospective purchasers for sales of estate property fall within the Trustee's statutory duties. *Id.* at 700–01. Dortch should not be billing the estate for communicating with a prospective purchaser's agent. That is the Trustee's duty, and that is why the Trustee receives a fee under § 326(a) of the Code.

4.   Examples of Excessive Billing

     *a.*   ***First Example***

**Time Entry of July 17, 2014 – "Draft Motion to Sell Oak Dale**
**Way, 2 Acres" – 2.10 hours ($630.00), entered by Lindstrom**

The Court has attached as **Exhibit No. 2** to this Memorandum Opinion a copy of the

motion referenced in this time entry.  A review of this pleading reflects that this motion contains

approximately three double-spaced pages of information about a proposed sale of property.  For

any attorney to bill 2.1 hours—which translates into 126 minutes of drafting at a cost of

$630.00—is once again unreasonable.  Yet, that is exactly what the attorney who drafted this

motion—Lindstrom—billed to the estate.  When asked about this entry at the hearing on the

Final Fee Application, Lindstrom gave the following testimony:

> Court:       . . . [Y]ou are representing to me – the representation is being made to me in this timesheet entry of yours that it took you 2.1 hours to draft what is a roughly three and one-quarter page motion . . . Did it take you 2.1 hours to draft this motion?

> Lindstrom:   When I put the word "draft" in here, I include verifying the amounts . . . the amount for sale . . . receipts less ten percent closing . . . [i]t did not take me 2.1 hours to actually physically type all this out . . . .

>    . . .

> Court:       So how long did it take you to actually draft this motion to sell, which is marked as Exhibit 2?

>    . . .

> Lindstrom:   I really don't know because I wouldn't have typed it straight out sitting down.  I do know that the entire process of verifying the information, talking to Mr. Tow, talking with his assistant, probably between three hours and four hours to complete that. And I don't know that to a certain – it's been quite some time, but I do recall it taking longer and me thinking to myself, this motion's

16

> only four or five pages long, I can't bill someone four
> hours for that amount of time.

[Hr'g Tr. 9:17–12:1, Feb. 12, 2016]; [Court's Ex. Nos. 1 (the Firm's fee bill statement) & 2

(Doc. No. 53)].

Thus, in the time entry itself, Lindstrom represented to this Court and the estate's

creditors that he spent 2.1 hours drafting this motion. Yet, when asked to explain this time, he

now explains that the word "draft" in his mind includes more than just typing the pleading. The

Court would suggest to Lindstrom that he needs to be more precise in his billing methods rather

than lumping all of the services that he provided into the one category of "draft." Indeed, in

numerous opinions over the past several years, this Court has emphasized that it enforces the

U.S. Trustee's guidelines on fee applications, including lumping.[3]    *See, e.g.*, *In re Digerati*

*Technologies, Inc.*, 537 B.R. 317 (Bankr. S.D. Tex. 2015); *In re Ritchey*, 512 B.R. 847, 870–72

(Bankr. S.D. Tex. 2014); *In re Jack Kline Co., Inc.*, 440 B.R. 712, 752–53 (Bankr. S.D. Tex.

2010); *In re Energy Partners, Ltd.*, 422 B.R. 68, 89 (Bankr. S.D. Tex. 2009).

Typically, lumping is when the attorney describes a series of services for which he should

break out the time spent on each separate and distinct task but, instead, sets forth only the

aggregate time for all of the services. Here, Lindstrom has committed a different type of

lumping. He has used the word "draft" to describe a bundle of services that need to be separately

delineated. What Lindstrom should have done, at a minimum, was to break down his time

between: (1) verifying the information contained in the motion; (2) conferring with the Trustee;

and (3) actually typing this pleading—and set forth the time he spent on each of these discrete

tasks. Even if he had done so, however, the Court still finds it unreasonable for him to bill an

---

[3] U.S. DEP'T OF JUSTICE, *Guidelines for Reviewing Applications for Compensation (Fee Guidelines)*, JUSTICE.GOV (Feb. 21, 2013 4:50 PM), http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/feeguide.htm. The U.S. Trustee Guidelines expressly state that: Time entries should be kept contemporaneously with the services rendered *in time periods of tenths of an hour.* Services should be noted in detail and not combined or "lumped" together, with each service showing a separate time entry; however, tasks performed in a project which total a <u>de minimis</u> amount of time can be combined or lumped together if they do not exceed .5 hours on a daily aggregate.

aggregate amount of 2.1 hours to verify the information, confer with the Trustee about this information, and then to type the pleading.

### b. *Second Example*

> **Time Entry of September 4, 2014 – "Prepare for Motion to Withdraw Motion for Sale" – 0.70 hours ($210.00), entered by Lindstrom**

Lindstrom did not provide any testimony about this entry. The Court is at a loss to understand why he would need 0.7 hours—representing a charge to the estate of $210.00—to prepare for a motion to withdraw a motion for sale. In reviewing the docket sheet, the Court notes that: (1) on July 24, 2014, the Firm filed a motion to sell certain property, [Doc. No. 53]; (2) on August 13, 2014, the Firm filed a motion to withdraw this pending motion on the grounds that the Trustee had decided to obtain an appraisal on the property proposed to be sold, [Doc. No. 54]; and (3) on August 22, 2014, the Firm filed a notice of hearing on the motion to withdraw giving parties-in-interest notice that a hearing on the motion to withdraw would be held on September 4, 2014, [Doc. No. 55]. Thus, the Court has little doubt that Lindstrom's charge of 0.7 hours to "prepare for motion to withdraw motion for sale" relates to the hearing held on September 4, 2014.

The Court finds that to bill this amount of time is unreasonable. This hearing lasted approximately 5 minutes and involved Lindstrom appearing at this hearing and explaining why the Trustee wanted to withdraw the motion.[4] The oral explanation that Lindstrom gave to this Court at the September 4, 2014 hearing could not possibly have required him to spend 0.7 hours to prepare; or, if it did, it is unreasonable to bill this amount of time.

---

[4] Lindstrom has a separate entry on September 4, 2014 for 0.8 hours ($240.00) to "Attend hearing on motion to withdraw." Because the hearing was only a few minutes, the Court assumes that most of the 0.8 hours that Lindstrom billed is for traveling to and from the courthouse. The Court has no problem with this particular entry.

5. <u>Examples of Duplicate Entries</u>

    *a.* ***First Example:***

> **Time Entry of January 6, 2015 – "Receipt, review and analyze Order Granting Trustee's Amended Motion to Sell Property Free and Clear of All Liens, Claims and Encumbrances" – 0.20 hours ($75.00), entered by Dortch**

> **Time Entry of January 7, 2015 – "Receipt and review Order Granting Trustee's Amended Motion To Sell Property Free and Clear of all Liens, Claims and Encumbrances" – 0.10 hours ($30.00), entered by Lindstrom**

When asked about the January 6, 2015 time entry, Lindstrom testified that either the January 6, 2015 time entry (entered by Dortch) or the January 7, 2015 time entry (entered by Lindstrom) should be stricken, as these entries are duplicative. [Hr'g Tr. 15:21−16:17, Feb. 12, 2016]. At the February 16 Hearing, Dortch agreed that this action should not have been billed twice. [Hr'g Tr. 19:3−25, Feb. 16, 2016].

Aside from the fact that Dortch and Lindstrom were billing the estate for rendering the exact same service, there is another problem. Reviewing an order approving the sale of property is a task that the Trustee himself should be doing and for which the estate should not have to pay any attorney. *King*, 546 B.R. at 699–700.

    *b.* ***Second Example:***

> **Time Entry of November 26, 2014 – "Confer with Trustee regarding setting hearing to approve sale and retention of appraiser" – 0.20 hours ($60.00), entered by Lindstrom**

> **Time Entry of November 26, 2014 – "Confer with Trustee regarding Appraisal and re-setting of Motion to Sell" – 0.20 hours ($60.00), entered by Lindstrom**

According to the Firm's fee bill statement, Lindstrom made two entries on November 26, 2014. When asked about the second time entry, Lindstrom testified that it is a duplicative entry and should be stricken from the Firm's fee bill statement. [Hr'g Tr. 14:20−15:4, Feb. 12, 2016].

Aside from the glaring fact that the Trustee, if he had reviewed the fee bill statement as carefully as he should have given his fiduciary duty to creditors, failed to catch this duplicative entry, Lindstrom himself also overlooked it—leaving this Court to wonder just how carefully he reviewed his own entries before allowing the fee bill statement to be sent to the Trustee.

## C.  Other Infirmities in the Final Fee Application

Attached to both the Original Application to Employ and the Amended Application to Employ was an affidavit of Dortch describing the scope of the Firm's representation of the Trustee.  Specifically, Dortch described this scope as follows:

> Legal representation undertaken by the Firm includes (a) assisting the Movant in claims owned by the estate against third parties; (b) preparing and filing such pleadings as are necessary to pursue the estate's claims against third parties; (c) conducting appropriate examinations of witnesses, claimants and other parties in interest in connection with such litigation; (d) representing the Movant in any adversary proceedings and other proceedings before the Court and in any other judicial or administrative proceeding in which the claims described herein may be affected; (e) collecting any judgment that may be entered in the contemplated litigation; (f) handling any appeals that may result from the contemplated litigation; and (g) performing any other legal services that may be appropriate in connection with the prosecution of the litigation described above.

[Finding of Fact No. 6].

The language above led this Court to believe that the Firm would be involved in litigation on behalf of the Trustee, including filing suits to recover preferential and fraudulent transfers and perhaps other property for the benefit of the estate.  Yet, a review of the timesheets attached to the Final Fee Application reflects that the Firm was doing nothing of the sort for the time period covered by the Final Fee Application.  Rather, the services rendered exclusively involved selling property interests, such as real estate and easements.  At the hearing held on February 16, 2016, when this Court questioned Dortch about this issue, he responded as follows: "You are exactly

right, your Honor, and we should withdraw this and we should have sought a *nunc pro tunc* or more specific authority and we should withdraw this application in its entirety." [Hr'g Tr. 15:21–24, Feb. 16, 2016].

Rule 2014(a) requires that an application to employ a professional describe the scope of employment; and case law is clear that if the scope changes, disclosure should be made to the Court and creditors. *See In re West Delta Oil Co., Inc.*, 432 F.3d 347, 358 (5th Cir. 2005). There is no question that in the case at bar, the scope of the Firm's representation was not fully and properly disclosed. Dortch therefore made the right decision to withdraw the Final Fee Application after this Court raised this issue at the hearing. But, this Court should not have had to bring this problem to his attention in the first place. He is, after all, the attorney in charge of the Firm's representation of the Trustee, [Finding of Fact No. 5], and he should have complied with Rule 2014(a) on his own; it is, after all, a fundamental requirement of the bankruptcy system. Of course, the Trustee himself should have caught this infirmity when reviewing the time entries, and his failure to do so is yet another example of his dereliction of his fiduciary duty to the creditors of this Chapter 7 estate.

## D. The Firm's Withdrawal of the Final Fee Application

Having orally informed the Court at the hearing held on February 16, 2016 that the Firm would withdraw the Final Fee Application, Dortch subsequently filed the Notice of Withdrawal. [Finding of Fact No. 15]. The Court appreciates Dortch following through with his commitment. However, the last paragraph of the Notice of Withdrawal is disconcerting and merits comment. This paragraph reads as follow: "This Notice is filed to advise the creditors and parties in interest of the withdrawal of that Final Application by Cooper & Scully, P.C., for all purposes and its decision not to seek any additional fees in this matter other than the fees and expenses previously awarded." [Doc. No. 84, p. 1 ¶ 4].

This language is apparently meant to telegraph the Firm's intention that it will keep the funds that the Trustee has already paid to the Firm as a result of this Court's approval on June 13, 2014 of the Interim Fee Application. The Court approved a total amount of $6,440.00 in fees and $405.91 in expenses that the Firm requested in the Interim Fee Application. [Findings of Fact Nos. 9 & 10]. It is noteworthy that the Firm, after withdrawing the Final Fee Application, has not filed another final fee application requesting that this Court enter a final order—as opposed to the interim order that was entered in 2014—approving the $6,440.00 in fees and the $405.91 in expenses. More than two months have now passed since the Firm filed the Notice of Withdrawal. Apparently, the Firm simply believes that the Notice of Withdrawal will suffice to allow it to keep the $6,845.91 that it has already received from the Trustee.

Its belief is misplaced. Indeed, in the Order Approving Interim Fee Application, this Court specifically stated that "[the Firm] be awarded allowance of fees in the amount of $6,440 [and expenses in the amount of $405.91], *subject to further consideration by this Court in their final fee application.*" [Doc. No. 51] (emphasis added). This language is entirely consistent with Fifth Circuit precedent. *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1321 (5th Cir. 1989) ("We disagree with [the trustee's] contention that interim fee awards are only subject to limited review. Clearly, interim awards are subject to final adjustments and, as such, fully reviewable."); *In re Las Vegas Monorail Co.*, 458 B.R. 553, 555 n. 4 (Bankr. D. Nev. 2011) ("Notwithstanding this curious silence, the court cautions counsel, as it has cautioned counsel at every interim fee application thus far, that interim approval is not final approval, and that counsel will bear a heavy burden of justifying such fees in any final fee application."). Thus, the Firm must file a final fee application seeking final approval for the fees of $6,440.00 and the expenses of $405.91 that this Court approved in its Order Approving Interim Fee Application. [Finding of Fact No. 10]. The Court will give the Firm 14 days to file this application. If the Firm timely files the application,

the Court will decide whether to grant the application in whole, in part, or not at all. If the Firm does not file the application, the Firm will be required to disgorge the $6,845.91 and these funds will be used to pay unsecured creditors, unless of course other administrative claims remain to be paid.

Assuming the Firm files this final fee application, the Court will set a hearing and give the Firm an opportunity to argue why the Court should enter a final order approving fees of $6,440.00 and the expenses of $405.91.  Given the numerous infirmities with the Final Fee Application (that the Firm has withdrawn), this Court has the discretion to require the Firm to disgorge some or all of the $6,845.91.  In his concurrence in *In re Woerner*, 783 F.3d 266 (5th Cir. 2015), Judge Grady Jolly contextualized this broad discretion within the framework for evaluating fee applications:

> (1) a court is permitted, but not required, to award fees under § 330 for services that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed (or contributed to the administration of the estate); and (2) **courts may consider all other relevant equitable factors**, as stated in § 330(a)(3), including as one of those factors, when appropriate, whether a professional service contributes to a successful outcome.

*Id.* at 278 (Jolly, J., concurring) (emphasis added).  Further, though Judge Prado's majority opinion in *Woerner* clarifies that bankruptcy courts *may* award compensation for failed efforts as long as the efforts were reasonable, it "is not intended to limit courts' broad discretion" to consider "all relevant factors," including the ultimate outcome of the case. *Id.* at 277.

In the case at bar, in deciding how to rule on any subsequent final fee application filed by the Firm, this Court has the right to exercise its discretion to "consider all other relevant factors." Here, some—but by no means all—of the relevant factors that this Court will consider when reviewing the Firm's future final fee application—if it is filed—will be the infirmities associated with the Final Fee Application as already discussed herein.  The Court will also consider another

23

very important factor: how much of a distribution, if any, will the Trustee be making to unsecured creditors in this case?  In the Chapter 7 Fee Application Cover Sheet that the Firm filed with the Final Fee Application, the Firm estimated that there would be no distribution at all to general unsecured creditors.  [Doc. No. 69].  Given that the Firm has now withdrawn its request for the fees and expenses associated with the Final Fee Application (which total $7,916.26), it may well be that this $7,916.26 will be distributed to unsecured creditors; such a scenario would work in favor of the Firm with respect to the approval of $6,845.91 for which the Firm will be seeking in its final application.  Conversely, if the $7,916.26 will be distributed primarily or entirely to other administrative claimants, such a scenario would work against the Firm with respect to the approval of the $6,845.91.  The Court will expect the Firm to adduce testimony on this particular issue, among others.

## IV. CONCLUSION

Whenever Congress next considers amending the Code, it might want to change the existing provision allowing trustees to retain firms with which they are affiliated.  *IFS Financial Corp.*, *King*, and the case at bar—which involve three different Chapter 7 trustees in this District—suggest that trustees, instead of looking out for the interests of unsecured creditors to whom they owe a fiduciary duty, are looking out more for the interests of their affiliated law firms and themselves to the detriment of unsecured creditors.  Indeed, these cases reveal an unsavory side of the bankruptcy practice that harkens back to an era when bankruptcy was considered by many to be a corrupt practice of the law.  *In re Arkansas Co., Inc.*, 798 F.2d 645, 649 (3d Cir. 1986) (stating that the Code "was designed to eliminate the abuses and detrimental practices . . . [such as] the cronyism of the 'bankruptcy ring' and attorney control of bankruptcy cases."); Linda Coco, *Stigma, Prestige and the Cultural Context of Debt*, 16 Mich. J. Race & L. 181, 213 (2011) (reviewing history of the bankruptcy practice and its reputation for

incestuousness and cronyism).  This Court will therefore redouble its efforts to closely scrutinize all applications of trustees to employ affiliated firms as well as all fee applications of those law firms—and the Court will do so even if no objections are lodged.

The Court directs the United States Trustee to distribute this Memorandum Opinion to all of the panel Chapter 7 trustees in the Southern District of Texas so that they are reminded that in order to fulfill their fiduciary duties, they need to closely review—and, when necessary, challenge—the invoices they receive from their law firms.  When they fail to do so, not only do the unsecured creditors suffer; the integrity of the entire system suffers.

An order consistent with this Memorandum Opinion will be entered simultaneously herewith.

Signed on this 10th day of June, 2016.

Jeff Bohm
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 13-32728 CHAPTER 7 |
| | § | JUDGE BOHM |
| MCCOLLOM INTERESTS, LLC | § | |
| **DEBTOR** | § | |

## TRUSTEE'S MOTION TO WITHDRAW MOTION REQUESTING
## APPROVAL TO SELL PROPERTY

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**This motion seeks an order that may adversely affect you. If you oppose the motion, you
should immediately contact the moving party to resolve the dispute. If you and the moving
party cannot agree, you must file a response and send a copy to the moving party. You
must file and serve your response within 21 days of the date this was served on you. Your
response must state why the motion should not be granted. If you do not file a timely
response, the relief may be granted without further notice to you. If you oppose the motion
and have not reached an agreement, you must attend the hearing. Unless the parties agree
otherwise, the court may consider evidence at the hearing and may decide the motion at the
hearing.**

**Represented parties should act through their attorney.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TO THE HONORABLE JEFF BOHM UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, Rodney Tow, Trustee, and files this Motion to Withdraw Motion

Requesting to Sell Property and would show the Court the following:

### I. <u>Introduction</u>

1.      This Motion seeks to withdraw the request presented in the Motion to Sell

Property Free and Clear of All Liens, Claims and Encumbrances (Doc. No. 53).

**EXHIBIT No. 1**

**TRUSTEE'S MOTION TO WITHDRAW MOTION REQUESTING**                    Page 1 of 5
**APPROVAL TO SELL PROPERTY**
D/909182v1

## II. Jurisdiction and Venue

2.      This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §1334(b).   Venue is proper pursuant to 28 U.S.C. §§1408 & 1409.   This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) & (N).

## III. Argument

3.      On May 6, 2013, McCollom Interests, LLC (herein "the Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code.   Rodney Tow was appointed Trustee and continues in that capacity.

4.      On July 24, 2014, Trustee filed a Motion to Sell Property Free and Clear of All Liens, Claims and Encumbrances (Doc. No. 53).

5.      The Trustee now wishes to withdraw that motion in order to have an appraisal done of the property.   The Trustee will re-file the Motion to Sell Property Free and Clear of All Liens, Claims and Encumbrances at a later date, if appropriate.

WHEREFORE, PREMISES CONSIDERED, Rodney Tow, Trustee, moves this Court to grant this Motion to Withdraw the Trustee's Motion to Sell Property Free and Clear of All Liens, Claims and Encumbrances, and for such other and further relief that he may be justly entitled.

Respectfully Submitted:


BY: _/s/ T. Micah Dortch_                    .
    **TIMOTHY MICAH DORTCH**
    Texas Bar No. 24044981
    SDTX Bar No. 630903

    **COOPER & SCULLY, P.C.**
    900 Jackson Street, Suite 100
    Dallas, Texas 75202
    (214) 712-9500
    (214) 712-9540 (fax)
    Email: Micah.Dortch@cooperscully.com
    **COUNSEL FOR TRUSTEE**
    **RODNEY TOW**

**OF COUNSEL:**

**COOPER & SCULLY, P.C.**
Christopher D. Lindstrom, State Bar No. 24032671
SDTX Bar No. 33525
700 Louisiana, Suite 3850
Houston, Texas 77002
Telephone: (713) 236-6800
Facsimile: (713) 236-6880
Chris.Lindstrom@cooperscully.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Motion to Withdraw Motion Requesting to Sell Property to the parties on the attached service list via regular first class U.S. mail postage prepaid or via electronically.

Signed this the 13th day of August 2014.

/s/ *Timothy Micah. Dortch*
**TIMOTHY MICAH DORTCH**

## PARTIES REQUESTING NOTICE

McCollom Interests, LLC
3536 Bayou Forest Drive
Shoeacres, Texas 77571
*Debtor*

Larry A. Vick
908 Town & Country Blvd., Suite 120
Houston, Texas 77024
*Counsel for Debtor*

Office of the US Trustee
515 Rusk Ave., Suite 3516
Houston, Texas 77002
*U.S. Trustee*

Harris County
c/o John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 3064
Houston, Texas 77253-3064

Pacific Ridge Development Co., LLC
c/o Whitney V. Ables
Brandon T. Darden
Porter Hedges, LLP
1000 Main St., 36th Floor
Houston, Texas 77002

Cadence Bank, N.A.
c/o Bruce M. Badger
The Badger Law Office
3400 Avenue H, 2nd Floor
Rosenberg, Texas 77471

Clear Creek ISD
c/o Carl O. Sandin
Perdue, Brandon, Fielder, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Chambers County Tax Office
c/o Carl O. Sandin
Perdue, Brandon, Fielder, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Barbers Hill ISD
c/o Carl O. Sandin
Perdue, Brandon, Fielder, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Texas Comptroller of Public Accounts
Rachel Obaldo
Assistant Attorney General
c/o Sherri K. Simpson, Paralegal
Attorney General's Office
Bankruptcy & Collections Division
P.O. Box 12548
Austin, Texas 78711-2548

Label Matrix for local noticing
0541-4
Case 13-32728
Southern District of Texas
Houston
Thu Oct 17 11:48:08 CDT 2013

Harris County
c/o John P. Dillman
Post Office Box 3064
Houston, TX 77253-3064

McCollom Interests, LLC
3536 Bayou Forest Drive
Shoreacres, TX 77571-7182

Pacific Ridge Development Co., LLC
c/o Whitney V. Ables
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002-6341

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

Barbers Hill ISD
c/o Perdue Brandon Fielder Collins & Mot
1235 North Loop West, Suite 600
Houston, TX 77008-1772

Barbers Hill Independent School District
P.O. Box 1108
Mont Belvieu, TX 77580-1108

Cadence Bank
17 North 20th Street
Birmingham, AL 35203-4012

Cadence Bank NA
301 E Main Street
Starkville, MS 39759-8089

Caterpillar Financial Services Corp.
2120 West East Ave
Nashville, TN 37203

Chambers County Tax Assess/Collector
P O Box 519
Anahuac, TX 77514-0519

Chambers County Tax Office
P.O. Box 519
Anahuac, TX 77514-0519

(p)CITIBANK
PO BOX 790034
ST LOUIS MO 63179-0034

Clear Creek Independent School District
P.O. Box 799
League City, TX 77574-0799

Florentino G. Martinez, Melissa J.
Martinez d/b/a Martinez Trucking Co.
c/o Albert Lee Giddins, Attorney
3009 Strawberry Road
Pasadena, TX 77502-5216

Four Seasons Equipment, Inc.
8111 Mills Road
Houston, TX 77064-1111

Harris County Flood Control
9900 NW Freeway
Houston, TX 77092-8601

Harris County Tax Assessor/Collector
P. O. Box 4622
Houston, TX 77210-4622

Harris County et al
c/o John P. Dillman
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Tx. 77253-3064

JJH Law
351 NW 12th Avenue
Portland, OR 97209-2905

John Boswell
c/o Brandon T. Darden/Porter Hedges
1000 Main Street, 36th Floor
Houston, TX 77002-6341

John R. Hindman
743 Gilpin Street
Houston, TX 77034-2019

Komatsu Financial Limited Partnership
P O Box 5049
Rolling Meadows, IL 60008-5049

Kyle R. Sears, Attorney
808 Travis, 20th Floor
Houston, TX 77002-5704

Larry A. Vick
908 Town & Country Blvd., Suite 120
Houston, TX 77024-2208

Pacific Ridge Development Co, LLC, and
Seabrook Venture, LLC
c/o Brian G. Gough, Attorney
812 Presidio Ave.
Santa Barbara, CA 93101-2210

Phil Sandlin, Constable Precinct 8
7330 Spencer Highway
Pasadena, TX 77505-1824

Start & Busch, LLC
3720 Decker Drive
Baytown, TX 77520-1644

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

Todd S. Pierce
Caine & Weiner, Attorneys
475 Sansome Street, 19th Floor
San Francisco, CA 94111-3112

Trinity, a divison of Bank of the West
475 Sansome Street, 19th Floor
San Francisco, CA 94111-3112

U. S. Trustee
515 Rusk, Suite 3615
Houston, TX 77002-2604

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

Wells Fargo Equipment Financing, Inc.
1540 West Fountainhead Parkway
Tempe, AZ 85282-1839

John W. Boswell
c/o Whitney V. Ables
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002-6341

Larry A. Vick
Attorney at Law
908 Town & Country Blvd., Suite 120
Houston, TX 77024-2208

Rodney D Tow
Tow and Koenig PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380-1960


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Citibank SD, NA
Attn: Centralized Bankruptcy
P O Box 20507
Kansas City, MO 64195

Texas Comptroller of Public Accounts
P O Box 13528
Austin, TX 78711-3528


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Barbers Hill Independent School District

(u)Cadence Bank, N.A.
Cadence Bank, N.A.

(u)Chambers County Tax Office

(u)Clear Creek Independent School District

(u)McCollom Interests, LLC

(d)Pacific Ridge Development Company, LLC
c/o Whitney V. Ables
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002-6341

End of Label Matrix
Mailable recipients    36
Bypassed recipients     6
Total                  42

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 13-32728 CHAPTER 7** |
| | § | **JUDGE BOHM** |
| MCCOLLOM INTERESTS, LLC | § | |
| **DEBTOR** | § | |

---

### TRUSTEE'S MOTION TO SELL PROPERTY FREE AND CLEAR OF
### ALL LIENS, CLAIMS AND ENCUMBRANCES

---

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**TO THE HONORABLE JEFF BOHM UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, Rodney Tow, Trustee, and files this Motion to Sell Property Free and Clear of All Liens, Claims and Encumbrances and would show the Court the following:

### I.

This Motion seeks approval for a sale of certain assets of this Estate.

| | | |
|---|---|---|
| 1. | Asset to be sold: | Real property described as +/-2.77 Acres at the end of Oak Dale Way in Seabrook, Texas, legally known as Res E Blk 1 (easement purposes) Oak Ridge Meadows Section 1 Amended. |
| 2. | Proposed Sale Price: | $7,500.00 |

---

**EXHIBIT No. 2**

| 3. | Value in Schedules: | N/A |
|---|---|---|
| 4. | Scheduled Secured Lienholders: | N/A |
| 5. | Appraisal District Value: | N/A |
| 6. | Commission: | None. |
| 7. | Equity for this Sale: | $7,500.00 |
| 8. | Expected Receipts less 10% Closing Costs: | $6,750.00 |
| 9. | Schedule E Total: | $0.00 |
| 10. | Schedule F Total: | $883,807.16 |
| 11. | Claims Bar Date: | 3/10/14 |

12.    Claims Filed: (as of 7/17/14 at 11:00 am)

| | | |
|---|---|---|
| a. | Secured | $573,720.46 |
| b. | Priority | $15,848.71 |
| c. | Unsecured | $265,213.95 |

| 13. | Name of Secured Lender: | N/A |
|---|---|---|

14.    Name of Taxing Authorities:
- a.    Harris County
- b.    Clear Creek ISD

## Jurisdiction and Venue

15.    This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §1334(b). Venue is proper pursuant to 28 U.S.C. §§1408 & 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) & (N).

## Background

16.    On May 6, 2013, McCollom Interests, LLC (herein "the Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Rodney Tow was appointed Trustee and continues in that capacity.

17.     The Trustee has received a Real Estate Sales Contract for the purchase of an easement of land known as +/-2.77 Acres at the end of Oak Dale Way in Seabrook, Texas, legally known as Res E Blk 1 (easement purposes) Oak Ridge Meadows Section 1 Amended. The offer is from Impac Partners, Inc., and a copy of the offer is attached as Exhibit "1". The Trustee seeks approval by this Court of the sale of this asset. The sale is to be free and clear of all liens, claims and encumbrances.

18.     The Debtor's Bankruptcy Schedules do not separately list this easement and there is no secured creditor on this property.

19.     Any property taxes will be prorated to the date of closing.

20.     This sale will provide funds to the Estate which will be used to pay administrative expenses and increase the distribution to unsecured creditors. The exact amount to be paid to unsecured creditors cannot be calculated at this time. The Claims Register shows secured creditors in the amount of $573,720.46, priority creditors in the amount of $15,848.71 and unsecured claims in the amount of $265,213.95 as of July 17, 2014 at 11:00 am. The deadline to file a claim in this case was March 10, 2014.

21.     The purchase price in the Impac Partners, Inc. offer is $7,500.00

22.     No commission will be incurred or paid for the sale of this property.

23.     The Trustee believes the sale is in the best interest of the Estate because it is the fastest and easiest way to sell the assets and will provide the Estate with the best recovery considering the current condition of the assets.

24.     Information regarding the property can be obtained by contacting the Trustee, Rodney Tow, 26219 Oak Ridge Drive, The Woodlands, Texas 77380; (281) 681-9100, rtow@towkoenig.com.

25.     Objections and requests for hearing before the Bankruptcy Judge, if any, as to the above sale, shall be in writing and filed with the clerk of the Bankruptcy Court and served upon the Trustee.  Any objections not timely filed and served may be deemed waived.

26.     The Trustee requests that Impac Partners, Inc.'s offer be determined to be in good faith as that term is used in 11 U.S.C. §363(m) so they may close within fourteen days from the entry of the order approving the sale.

WHEREFORE, PREMISES CONSIDERED, Rodney Tow, Trustee, moves this Court to grant this Motion to Sell Property Free and Clear of All Liens, Claims and Encumbrances, that the sale be free and clear of all liens, claims and encumbrances, and for such other and further relief that he may be justly entitled.

Respectfully Submitted:

BY: /s/ T. Micah Dortch                    .
   **TIMOTHY MICAH DORTCH**
   Texas Bar No. 24044981
   SDTX Bar No. 630903

**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
(214) 712-9500
(214) 712-9540 (fax)
Email: Micah.Dortch@cooperscully.com
**COUNSEL FOR TRUSTEE**
**RODNEY TOW**

OF COUNSEL:

**COOPER & SCULLY, P.C.**
Christopher D. Lindstrom, State Bar No. 24032671
SDTX Bar No. 33525
700 Louisiana, Suite 3850
Houston, Texas 77002
Telephone: (713) 236-6800
Facsimile: (713) 236-6880
Chris.Lindstrom@cooperscully.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Motion to Sell Property Free and Clear of All Liens, Claims and Encumbrances to the parties on the attached service list via regular first class U.S. mail postage prepaid or via electronically.

Signed this the 24th day of July 2014.

/s/ Timothy Micah. Dortch

**TIMOTHY MICAH DORTCH**

## PARTIES REQUESTING NOTICE

McCollom Interests, LLC
3536 Bayou Forest Drive
Shoeacres, Texas 77571
*Debtor*

Larry A. Vick
908 Town & Country Blvd., Suite 120
Houston, Texas 77024
*Counsel for Debtor*

Office of the US Trustee
515 Rusk Ave., Suite 3516
Houston, Texas 77002
*U.S. Trustee*

Harris County
c/o John P. Dillman
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 3064
Houston, Texas 77253-3064

Pacific Ridge Development Co., LLC
c/o Whitney V. Ables
Brandon T. Darden
Porter Hedges, LLP
1000 Main St., 36th Floor
Houston, Texas 77002

Cadence Bank, N.A.
c/o Bruce M. Badger
The Badger Law Office
3400 Avenue H, 2nd Floor
Rosenberg, Texas 77471

Clear Creek ISD
c/o Carl O. Sandin
Perdue, Brandon, Fielder, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Chambers County Tax Office
c/o Carl O. Sandin
Perdue, Brandon, Fielder, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Barbers Hill ISD
c/o Carl O. Sandin
Perdue, Brandon, Fielder, Collins & Mott, LLP
1235 North Loop West, Suite 600
Houston, Texas 77008

Texas Comptroller of Public Accounts
Rachel Obaldo
Assistant Attorney General
c/o Sherri K. Simpson, Paralegal
Attorney General's Office
Bankruptcy & Collections Division
P.O. Box 12548
Austin, Texas 78711-2548

Label Matrix for local noticing
0541-4
Case 13-32728
Southern District of Texas
Houston
Thu Oct 17 11:48:08 CDT 2013

Harris County
c/o John P. Dillman
Post Office Box 3064
Houston, TX 77253-3064

McCollom Interests, LLC
3536 Bayou Forest Drive
Shoreacres, TX 77571-7182

Pacific Ridge Development Co., LLC
c/o Whitney V. Ables
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002-6341

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

Barbers Hill ISD
c/o Perdue Brandon Fielder Collins & Mot
1235 North Loop West, Suite 600
Houston, TX 77008-1772

Barbers Hill Independent School District
P.O. Box 1108
Mont Belvieu, TX 77580-1108

Cadence Bank
17 North 20th Street
Birmingham, AL 35203-4012

Cadence Bank NA
301 E Main Street
Starkville, MS 39759-8089

Caterpillar Financial Services Corp.
2120 West East Ave
Nashville, TN 37203

Chambers County Tax Assess/Collector
P O Box 519
Anahuac, TX 77514-0519

Chambers County Tax Office
P.O. Box 519
Anahuac, TX 77514-0519

(p)CITIBANK
PO BOX 790034
ST LOUIS MO 63179-0034

Clear Creek Independent School District
P.O. Box 799
League City, TX 77574-0799

Florentino G. Martinez, Melissa J.
Martinez d/b/a Martinez Trucking Co.
c/o Albert Lee Giddins, Attorney
3009 Strawberry Road
Pasadena, TX 77502-5216

Four Seasons Equipment, Inc.
8111 Mills Road
Houston, TX 77064-1111

Harris County Flood Control
9900 NW Freeway
Houston, TX 77092-8601

Harris County Tax Assessor/Collector
P. O. Box 4622
Houston, TX 77210-4622

Harris County et al
c/o John P. Dillman
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Tx. 77253-3064

JJH Law
351 NW 12th Avenue
Portland, OR 97209-2905

John Boswell
c/o Brandon T. Darden/Porter Hedges
1000 Main Street, 36th Floor
Houston, TX 77002-6341

John R. Hindman
743 Gilpin Street
Houston, TX 77034-2019

Komatsu Financial Limited Partnership
P O Box 5049
Rolling Meadows, IL 60008-5049

Kyle R. Sears, Attorney
808 Travis, 20th Floor
Houston, TX 77002-5704

Larry A. Vick
908 Town & Country Blvd., Suite 120
Houston, TX 77024-2208

Pacific Ridge Development Co, LLC, and
Seabrook Venture, LLC
c/o Brian G. Gough, Attorney
812 Presidio Ave.
Santa Barbara, CA 93101-2210

Phil Sandlin, Constable Precinct 8
7330 Spencer Highway
Pasadena, TX 77505-1824

Start & Busch, LLC
3720 Decker Drive
Baytown, TX 77520-1644

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

Todd S. Pierce
Caine & Weiner, Attorneys
475 Sansome Street, 19th Floor
San Francisco, CA 94111-3112

Trinity, a divison of Bank of the West
475 Sansome Street, 19th Floor
San Francisco, CA 94111-3112

U. S. Trustee
515 Rusk, Suite 3615
Houston, TX 77002-2604

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

Wells Fargo Equipment Financing, Inc.
1540 West Fountainhead Parkway
Tempe, AZ 85282-1839

John W. Boswell
c/o Whitney V. Ables
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002-6341

Larry A. Vick
Attorney at Law
908 Town & Country Blvd., Suite 120
Houston, TX 77024-2208

Rodney D Tow
Tow and Koenig PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380-1960

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Citibank SD, NA
Attn: Centralized Bankruptcy
P O Box 20507
Kansas City, MO 64195

Texas Comptroller of Public Accounts
P O Box 13528
Austin, TX 78711-3528

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Barbers Hill Independent School District

(u)Cadence Bank, N.A.
Cadence Bank, N.A.

(u)Chambers County Tax Office

(u)Clear Creek Independent School District

(u)McCollom Interests, LLC

(d)Pacific Ridge Development Company, LLC
c/o Whitney V. Ables
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX 77002-6341

End of Label Matrix
Mailable recipients    36
Bypassed recipients     6
Total                  42